Case number 21-5223, Perioperative Services And Logistics, LLC, Appellant v. United States Department Of Veterans Affairs. Mr. Colchin for the Appellant, Mr. Dreyer for the Appellant. Seems like you're not the big draw this morning, but we're interested nonetheless, so please proceed. I appreciate that. So my name is Ed Colchin, I'm here representing the Appellant in this case, Perioperative, and we're here on a FOIA, but it's kind of a unique FOIA, you know, not one that I've previously handled or seen, in which we're actually trying to figure out what to do when a court effectively decided a matter based upon a declaration we didn't see, and on which we can't comment because we've never seen it. And then we filled a document under FOIA based on a secret declaration, and they didn't see the document in camera that they're withholding. The district court didn't see the document in camera. So I'm going to pass. It's not an ideal situation, but I mean, we've seen a lot of FOIA cases, and it's not that unusual to have a declaration that explains the basis for withholding without revealing the information that the government is seeking. No question, but that declaration is then provided to physicians so that they can see it to the extent that it doesn't disclose what it is they're trying to protect. Here, we're giving nothing, and that really comes down, that really is the amount of this problem. The government's justification for what happened here is that Hubbard, United States versus Hubbard, which is of what to do, doesn't apply, and it's just not right. Let me just make sure I understand. Hubbard applies to a situation where you're trying to obtain... The question here is whether or not the district court properly relied on an ex parte declaration, right? You're not seeking under FOIA that declaration, correct? You're just arguing that the district court shouldn't have relied on, right? So this is not a Hubbard case. This is controlled by Harris. No. No? I disagree. Okay, tell me why. Because tyranny declaration is a judicial record. That's why Hubbard applies. But you're not seeking a copy of that in this case. Well, in order to argue... Isn't that right? I mean, you might, and then it would be a Hubbard case. It's a two-step process. In order to argue about... Can I just ask you, are you seeking the tyranny declaration? No, right? In order to argue about the two-page document, we're seeking the tyranny declaration so that we don't argue about the two-page document. It's a two-step process. We can't even begin addressing the underlying issue in this case because we haven't seen why it's being withheld. You took Hubbard in the abstract and asked yourself how it might apply to this kind of situation where you have a FOIA requester and the government says, we need to justify the withholding, but we can't do it without letting the count out of the bag. And you ask yourself how those six factors would apply to that kind of situation. Wouldn't you get something pretty close to Ariyf anyway? Right. Okay, so what are we fighting over? But I don't think Ariyf says that we don't get the tyranny declaration. I think all Ariyf says at the bottom is that you've got to look at a balance of privacy versus Hubbard. That's all it does. And I think Hubbard basically does... The government doesn't dispute that. Well, okay, but what... So we're just, we're not talking... No, I mean, we're not talking about a legal disagreement between two noticeably different standards. We're talking about whether they met their burden of showing that they need to tell us a little bit more without revealing things that they're entitled to protect. I think at the bottom, a lot of tests that courts develop are based upon an amalgam of information and an amalgam of standards. And you can always watch them together and say, let's look at what's reasonable. And I don't disagree. Ariyf is reasonableness. Hubbard is reasonableness. Hubbard sets out six factors. Ariyf looks probably at two of the six factors. But the bottom line is that what Ariyf said is that if you have a lot of public already and you're just missing something and we have got to understand as a court what it is that... Why it is that we're redacting a small thing and it's not in the record, we can look at a declaration beyond what's already in the record. In this case, we have nothing. In other words, if there was a tyranny declaration that we saw and it said whatever it said, but there was something unique that tyranny couldn't say publicly and that was in a separate declaration, then you would have an Ariyf type of case. But here, we have nothing. We're sitting here arguing about something that we can't address because we haven't seen anything. Even in their brief, they disclose something about the tyranny application, the tyranny declaration, which we had never known before. But when you look at it, it made the tyranny declaration an improper declaration because it was argumentative. It does make your job harder, no doubt. But let's talk about a few things you can talk about, which is the merits, the balance on the merits. And it seems like we have a lot of authority for the proposition that a person who comes forward with information, provides information to the government, has some privacy interest in not having his or her identity just divulged within Exemption 6. You agree with that? The case is going both ways. And I tell you what I think the difference is. Really? What? Colin is one very good example. I'm sorry, which one? Colin. We cited a whole bunch of them in our brief. And I can find it. I just saw that earlier this morning in our reply brief. But there are a lot of cases in which this court, in which the district court, the U.S. District Court of District of Columbia address these issues. How about from this court? There's not much in this court. There's not much coming out of this court. But it's really all the same kind of law. Because with what the courts have said, and with basic reason, it tells you, is that you've got to look at something and say, is this really a privacy? How much privacy? How important is the privacy? And you look at the state. Well, this person, whoever it was that submitted this, he wasn't trying to, he wasn't an anonymous. He put his name on something and sent it to the U.S. government. So privacy, somewhat limited. Okay. Now, public. What is it that we need? We need to see how the government looked at this. And part of it is where it came from. Was it from a friend? Was it from a, you know, was it from a competitor? How do they look at that? So you look at the privacy, which is limited. And the cases have said that when somebody submits something to the government and puts their name on it, that privacy interest is extremely limited. And you look at the public need and the public needs to figure out what the VA did. What the government is up to is a standard phrase we use in cases. So what would this record, now you haven't seen it, but suppose it's just information. It's the allegation that your client sold defective products. That doesn't tell you how the government investigates. How would the complainant know that? He's not an inspector general reviewing the agency's investigatory process. He's a complainant saying your client sold bad products. Oh, did the complainant come from somebody who was a competitor? We don't know. Did the complainant come from somebody, was the complainant somebody who actually never dealt with Michael? I don't know. Was the complainant somebody who has the same last name as somebody at the VA who acted on this? We don't know. We don't know anything. So you're saying that the identity of the complainant is critical to what? It's possibly, the identity of the complainant is very important, but if we have a- It's the weighing. It's the privacy versus your interest in the identity, and maybe you lose. But if we had the email with that information redacted, we might say, well, now we can see what happened here. We don't need the identity because we see in the email that this person is saying, I work at a hospital and these people delivered- But the allegation is if you see the email, it will reveal the identity, which you're not entitled necessarily to have. So that's the allegation that is beyond my ability. I don't understand how looking at an email where information is redacted, addresses and names are redacted, we will know the identity of the person who submitted it. It just doesn't make any sense. If the person said, I'm in a hospital in, I don't know, Atlanta, Georgia. I'm in a VA hospital in Atlanta, Georgia. Okay, VA hospital in Atlanta, Georgia, but tell us it was a hospital. If the person says, I know that striker beds were what, because we think that that's what the complaint was because we heard something in an oral conversation where my client did. If we find out that it's really not striker beds, it's some other product that my client has never sold anywhere. We would be able to respond more forcefully. But the bottom line is, is that we know nothing. And the reason why we know nothing is because everything has been in a sealed brown bag and we've been given no- I mean, you're interested in the identity. You want to know the identity of the accuser, right? We might, but without looking at the information of the identity, we can't even argue why we need the identity. You admitted in your brief that you want to know the identity. You want to unmask the accuser. There is no question my client would like to know the identity. And the reason is because if this person is a out-and-out liar- I don't blame you for that, but I mean, let's not eat around the bush. That's what this case is about. That's what my client would like to do, would like to sue somebody for liable or slander. It's probably liable defamation. But that's not harassment. That's not the privacy interest that the government can protect. The government has no right to protect somebody from a liable suit. That's just wrong. The government has the right- Right, but it's a little bit unrealistic to then frame this as, you know, you can redact everything that bears on the identity and they release a document that, you know, says this came from a Yahoo email address. I always tell my clients, let's go step by step. If we see a document without the identity, maybe that will be enough. If we see the document not need the identity, that's step two. But without looking at anything, it's like arguing about ambiguities. Don't you want to redact your version so that your client can try to piece together what the identity is? And isn't the government's position that we don't know what your client knows, so if we reveal any of this, they might be able to unmask? I'll answer that in two ways. No. As I said, there are two steps. And I would tell people there are two steps. Let's look at the document without it, so that there's nothing that would possibly identify the person. That would be step one. Let's look at the tyranny declaration as to why they say they can't do that. That would be a certain part of the step. And two would be, the answer is that if we want that information, it's because we have a legitimate interest. It's not an illegitimate interest. All the cases that they cite about harassment, they know we want to harass this person, are all about their abortion clinic protesters who want to go in and beat up women who are going into an abortion clinic or physicians. It's that kind of concern. But in fact, this court has said we're not concerned about potential lawsuits or potential litigation that might develop. That's legitimate harassment if you want to look at it that way. But it's nothing that should prevent us from looking at this information. But again, we haven't seen the tyranny declaration. We haven't seen any part of this email. We're talking about nothing. That's what we have. Nothing. And that really is what this comes down to. Can the U.S. District Court decide a case based upon not giving us any information? Thank you, Judge Tatel. Any questions? Judge Payne, anything else? No, thank you. Thank you. We'll give you some time. Good morning. May it please the Court. Douglas Dreyer on behalf of the Department of Veterans Affairs. There are two issues here. First, the District Court acted comfortably within its discretion when it accepted the tyranny declaration ex parte. And second, the VA appropriately withheld the complaint under Exemption 6 for the reasons stated not just under SEAL and the tyranny declaration, but in the three public-facing declarations in this case. FOIA does not allow agencies to unmask a whistleblower in a case like this one. Let's talk about that. Put aside the information in the ex parte declaration for now, which might present case-specific issues. I mean, just as a general matter, you do have cases on your side saying there is a privacy interest and complainants have some privacy interest in their identity. But is there any requirement that that be a legitimate privacy interest? And I mean, suppose the person coming forward is a competitor with malicious intent who makes a false charge and substantially harms the FOIA plaintiff here. And sure, they want to bring a defamation action, but be a perfectly good action. So the privacy interest must stay focused on the interest of protecting the identity of the individual complainant. And there could be good, significant public interest reasons why the identity of a complainant should be disclosed. Perhaps there's less of an incentive to protect the private, to protect the identity of an individual who submitted a malicious complaint. But I want to emphasize that's not the case that's here today. So in the answer, for instance, the defendant denied that the complaint was false. The defendant certainly never conceded that there is a false complaint here. And also, I think where the focus has been is on the investigation eventually lifted at recall. But that is not in any sense a determination that the initial complaint itself is false. I also would like to focus on the particular request at issue here, because I do think the words matter. And the words particularly matter in this case, where my friend narrowed the FOIA request. So on page 15 of the joint appendix, the request is narrowed to, quote, the redacted form of the two-page document, i.e., not the complaint. That is all that is being taught here. And so it's directly contrary to what we were hearing earlier in the argument about what the reasons is. They explicitly disclaimed it's seeking just basically just the identity of the person. And so that's really what we're hearing today. Yeah. So I had a question about the attorney declaration. And so the case law says that a district court relying on in-camera submissions must make its reasons for doing so clear and make as much as possible of the in-camera submission available to the opposing party. And it seems that there was a request both in the motion for reconsideration and in the prior brief in the court below to at least give us some of this. And it seems to me that the district court did not address the option of redacting the tyranny declaration and giving some of it to the FOIA requester. And so I'm wondering if that's an abusive discretion where the court says it must make as much as possible available to the opposing party and it has to make its reasons for doing so clear. I don't see any explanation that it was considered redacting the tyranny declaration and some of it to the opposing party. So I think what's important here is that the defendant filed a motion for leave to file the tyranny declaration ex parte. And in that motion, it provided significant contents about the tyranny declaration. And that's not in the joint appendix, but it is ECF number 12, I believe, perhaps 10. It's either 10 or 12, sorry. But in that motion, it identifies the name of the declarant, it identifies the title of the declarant, and it provides what the defendant was able to say in a public facing setting. And so the district court gets presented with this motion with that information already on the record. And so it, and I would read the last two pages of the district court's opinion where it addresses this issue as really saying that, look, this information to the extent it should be disclosed, it already has been in that. Does it say that? I don't see that here. It doesn't use those exact words. No, Your Honor. So wasn't the court required to make its reasons for doing so clear? Those are the words of the Armstrong case. So you are coming up with a reason, but that's not what the court said. So I'm wondering if that's an abuse of discretion and if so, is there harmless error here? Well, I'd say, so the district court, for instance, it cited Barnard at the end of its opinion. So in the Barnard case, which is another district court opinion, the court did include a, the district court included a footnote explaining that it had assessed whether to, whether it could segregate any portions of the declaration and publicly, a public version and determined that it could not. And I think it could be read into the citation of the Barnard decision that that occurred here. There's no parenthetical or anything about Barnard. It's just cited. So you think that's sufficient to make its reasons for doing so clear, citing Barnard? I do, Your Honor. And I would, and again, I'd also submit that the motion itself is already disclosed, the disclosable, to the extent there are disclosable portions of the Petunia declaration, those portions were submitted in the motion itself. But there's no way for the opposing party to know that they don't know what's in the Petunia. And that's, you know, FOIA is an unusual case. And Arif pointed this out long ago, that this is really a case where the court's job is to determine whether to maintain material under seal. And so, you know, one party knows the contents of the withheld records while the other does not. And the courts have been charged with the responsibility of deciding the dispute without altering that unequal condition, since that would involve disclosing the very material sought to be kept secret. And so it is very difficult to provide additional information without forcing the government to concede its case in its brief. I think that's different from what I'm asking, because it seems to me that you could redact the Petunia declaration to preclude disclosure of the information that might disclose the identity of the complainant. And it seemed to me that this case law suggests that the district court was required to either do that or explain why it did not. And to that, I suppose I would say that to the extent there was any error below, it would still need to be not a harmless error. And here, since the motion itself disclosed contents of the Petunia declaration, disclosed the name of the person, the title of would be anything but harmless. Your position, you think you can win on the merits, even if we were to disregard the information in paragraph eight of tyranny, which might help you out. But if we disregard that, we're left with some reason to think that this was a competitor, the charge was false, may have been malicious, and it caused substantial damage to the complainant. And your position is just tough. Well, my position is that the tyranny declaration was indeed essential to the district court. Tyranny might make the case substantially different from what I just described, but I'm just testing here whether we need tyranny for you to win. I, the defendant does think we need tyranny to win. And the reason why is because... So he thinks you do need it? Yeah, we need tyranny to win in this case. And the reason we need that is because, I mean, if when the court looks at the test that was set forth in Areep and looks at the test set forth in Montgomery just this past July, one of those requirements of that test is that the validity of the exemption must, you need the information being provided ex parte in order to decide the validity of the exemption. And so if I were to answer that alternatively, then the tyranny declaration would perhaps never have, should never have been filed in the first place. Yeah, I see that. I think you're entitled to argue in the alternative, but I appreciate it. Judge Tatel? Okay, thank you. Counsel cited to Appendix 15 as something that limited or limited this. But the book is the appendix. What that is, is the letter from me saying as an initial limited. In other words, we're saying you've withheld everything and you've withheld it on the basis of Exemption 5. They didn't withhold it on Exemption 6. They withheld it on Exemption 5. And our position was, if you're withholding it on Exemption 5, as a limited matter, you have to at least initially give us something that's limited because Exemption 5 clearly cannot apply to what it issued. That's what that letter's about. There's nothing to do. It doesn't limit our request. That's just wrong. So it says in your letter, we ask that A, the redacted form of the two-page document be released. Read two paragraphs up. And B, the identity of the person or identity submitting the complaint be released and redacted from the form document. So that does seem to be narrowing your point of request. Read two paragraphs up. I am asking for a prompt initial limited release. And it goes on in the next paragraph to explain that Exemption 5 cannot apply to what it is that we're asking for a limited release. And you're denying us. In other words, they said, we're not giving you anything Exemption 5. I said, well, that's crazy because Exemption 5 cannot possibly apply to this stuff. So give us the initial limited release. Then we can find about everything else. And they wouldn't give us that either. But that doesn't limit this case. That's clear to know what's happening. The court asked us about cases in which this has occurred. People throw American away. We cited that case. We cited the case of Adelman in which people writing the government letters complaining were released. Their response was, well, look at Adelman 3 because it was additional litigation in Adelman. And that's true there was. But in the Adelman 3, it said, well, we're going to withhold the last X number of names because you already have 50 other names of the complainants. And these last ones are just the same category. So you have no real need for these names. So it's clear that releasing names is the rigor. That's really what should have occurred here. Thank you. Judge Tatel? No. Judge Pan? Okay. Thank you. The case is submitted.
judges: Katsas, Pan, Tatel